WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Javier Ruben Cordova,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>    Respondents. | No. CV-22-00195-TUC-JGZ (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Javier Ruben Cordova (Cordova or Petitioner) presently incarcerated in Arizona State Prison Complex-La Palma in Eloy, Arizona, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) Respondents filed their limited answer on July 20, 2022. (Doc. 9.) The time to file a reply has passed without a reply or a motion to extend the deadline. This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. (Doc. 4 at 4.)

As more fully set forth below, this Court recommends the Petition be denied and this matter be dismissed.

**I.     BACKGROUND**

    **a. State Court Criminal Proceeding**

The Arizona Court of Appeals described the facts underlying Petitioner's convictions as follows:

> ¶ 3 Late at night in October 2014, Cordova, Herrera, and Ortiz arrived at the home of C.H. and his wife D.H., having agreed on a plan to rob the couple, and knowing Herrera was armed with a collapsible baton. Herrera and Ortiz, who were wearing

badges, rang the bell, identified themselves as police officers, and told the couple that their relative had been in a serious car accident, while Cordova paced nearby.

¶ 4 After the couple admitted Herrera and Ortiz into the house, Herrera drew the baton and started hitting C.H. repeatedly on the head. Herrera then dropped the baton and hit C.H. with his fists while Ortiz picked up the baton and began struggling with D.H. C.H.'s son-in-law T.A. emerged from a bedroom and came to C.H.'s assistance, placing Herrera in a chokehold. Cordova then entered the house and began hitting C.H. with the baton. Cordova and Ortiz eventually ran out the front door, while C.H., D.H., and T.A. held Herrera until sheriff's deputies arrived. C.H. and T.A. both had multiple injuries, including gashes that required stitches, and D.H. had a crushed knee. The state charged Cordova, Herrera, and Ortiz in a single indictment, naming each of them in the nine counts of burglary, aggravated assault, and attempted robbery alleged.

*State v. Cordova*, No. CA-CR 2017-0081, 2018 WL 1762526, ¶¶ 3-4 (Ariz. App. Apr. 12, 2018).[1] A jury found Cordova guilty of burglary, three counts of aggravated assault with a deadly weapon or dangerous instrument, one count of aggravated assault resulting in temporary, substantial disfigurement, two counts each of attempted armed robbery and attempted aggravated robbery, and one count of impersonating a peace officer. *Id.* ¶¶ 1, 5. "The trial court sentenced him to a combination of concurrent and consecutive terms of imprisonment totaling 28.5 years." *Id.*

Cordova appealed his sentences. *Id.* ¶ 1. He argued some of his consecutive sentences violate Arizona statutes. *Id.* ¶ 6. On April 12, 2018, the Arizona Court of Appeals found no error and affirmed Cordova's convictions and sentences. *Id.* ¶ 18. There is no indication in the record whether Cordova petitioned to the Arizona Supreme Court for review. Cordova did not note a petition to the Arizona Supreme Court. (Doc. 1 at 2.)

**b. Post-Conviction Relief Proceedings**

On April 18, 2018, Cordova filed a notice of post-conviction relief. (Doc. 9-1 at 60.) On May 29, 2018, Cordova's counsel notified the post-conviction court that he was "unable to find a meritorious issue of law or fact which may be raised as a basis for relief pursuant

---

[1] The facts as recited by the court of appeals are entitled to a presumption of correctness. *See* § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in Arizona Supreme Court opinion should not be afforded presumption of correctness)

to Rule 32, Arizona Rules of Criminal Procedure." *Id.* at 55. The court relieved Cordova's counsel and set a deadline for Cordova to file a Petition on his own behalf. *Id.* at 62. The court warned that failure to comply with the deadline would result in dismissal. *Id.* at 63. On July 25, 2018, the court noted that Cordova had failed to file either a petition or a request for an extension. *Id.* at 65. The court then denied relief and dismissed the petition. *Id.* Cordova did not petition for review of the denial. (Doc. 9 at 4.)

### c. Current Habeas Proceeding

Cordova certifies he placed the present habeas petition in the prison mailing system on April 19, 2022. (Doc. 1 at 15.) It was filed on the Docket on May 25, 2022. (Doc. 1.) He raises two grounds for relief in his petition. *Id.* at 5-8. First, Cordova asserts the victim had been given a line-up and did not identify Cordova. *Id.* at 5. He states he has a learning disability that prevented him from exhausting this claim. *Id.* at 5-6. Second, he argues his counsel failed to properly explain his appeal options and present Cordova's mental health and disability evidence to the court. *Id.* at 7. He again asserts that he has mental health issues and disabilities that prevented him from exhausting his claims. *Id.* at 7-8. Cordova provides the following explanation as to why the one-year AEDPA statute of limitations should not bar his petition:

> Due to mental health issues and other disabilities explained in this packet should at least give [him] the benefit to have [his] sentence reduced and a chance to argue some points that this judicial system in this state, the State of Arizona, has been getting away with.

*Id.* at 13.

## II. TIMELINESS

Whether a petition is time-barred by the statute of limitations is a threshold issue that must be resolved before considering other procedural issues or the merits of the individual's claim. *See White v. Klitzkie,* 281 F.3d 920, 921-22 (9th Cir. 2002). The Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations applies here. *See* 28 U.S.C. § 2244(d)(1); *Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir. 1999). As potentially applicable here, the limitations period begins to run on the date when

- 3 -

"the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." § 2244(d)(2). In Arizona, an application for post-conviction relief commences when a notice of post-conviction relief is filed. *Isley v. Ariz. Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004). "State review ends when the state courts have finally resolved an application for state postconviction relief." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). Thus, once the state's "highest court has issued its mandate or denied review, no other state avenues for relief remain open," then the application is final and statutory tolling ends. *Id.* In Arizona, petitioners may petition for review within 30 days of the entry of the final decision or dismissal of a notice. Ariz. R. Crim. P. 32.16(a)(1).

Here, Cordova's judgment became final on May 13, 2018. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (explaining direct review is final when time to pursue direct review expires, if petitioner who do not pursue direct review to Supreme Court of United States); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007) (direct appeal final when time to seek review of decision expires); *see also* Ariz. R. Crim. P. 1.3 (computation of time), 31.21(b)(2)(A) ("A party must file a petition for review no later than 30 days after the Court of Appeals enters its decision, unless a party files a timely motion for reconsideration in the Court of Appeals . . . ."). However, Cordova filed his notice of post-conviction relief on April 18, 2018, which initiated statutory tolling. *See* § 2244(d)(2); Doc. 9-1 at 50. The post-conviction court dismissed the action on July 25, 2018. (Doc. 9-1 at 65.) This started the AEDPA clock. *See Lawrence*, 549 U.S. at 332. Thus, the statute of limitations expired on July 26, 2019. Cordova did not place his Petition in the mailing system until April 19, 2022—over two-and-a-half years later. (Doc. 1 at 15.)

This petition is untimely. Absent equitable tolling or manifest injustice, it should be dismissed.

### III. EQUITABLE TOLLING

A habeas petitioner may escape his untimely filing by establishing some ground for equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (Section 2244(d) "is subject to equitable tolling in appropriate cases."). The petitioner bears the burden of proof in seeking to equitably toll the AEDPA's statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "To be entitled to equitable tolling [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence*, 549 U.S. at 336 (quoting *Pace*, 544 U.S. at 418). "[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)). This is an extremely fact-dependent inquiry, which must be made on a case-by-case basis. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *see Holland*, 560 U.S. at 649-50, 654. An evidentiary hearing is not necessary when the record is amply developed. *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

Here, Petitioner argues that "due to mental health issues and other disabilities explained in this packet" that the Court "should at least give [him] the benefit to have [his] sentence reduced and a chance to argue some points." (Doc. 1 at 13.) The Court interprets this as a plea for equitable tolling.

#### a. Diligent Pursuit of Rights

Petitioners must act with "reasonable diligence" in pursuing their rights; courts do not require "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations omitted). Petitioners must show they had been "reasonably diligent in pursuing [their] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020). This requires petitioners to specify the steps they took to diligently pursue their claims. *Roy v. Lampert*, 465 F.3d 964, 972 (9th Cir. 2006) (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)). Courts must consider the "level of

care and caution in light of [petitioners'] particular circumstances." *Smith*, 953 F.3d at 599 (quoting *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011)).

Petitioner has made no claim that he was diligent in pursuit of his rights. (Doc. 1.) Respondents raised this issue in their answer. (Doc. 9 at 7.) Petitioner did not respond. While Petitioner states he has disabilities, he does not elaborate on their nature or effect. As such, the Court cannot determine his particular circumstances. His petition comes more than two-and-a-half years after the statute of limitations expired. Petitioner did not explain how he was diligent during those two- and-a-half years. The Court finds that Petitioner did not carry his burden to show diligent pursuit of his rights.

### b. Extraordinary circumstances

"[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" *Waldron-Ramsey*, 556 F.3d at 1011 (alteration in *Waldron-Ramsey*) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). A petitioner arguing their mental competency or impairment requires equitable tolling "must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing." *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015).

Here, Petitioner argues that his delay is because of his mental health and disabilities. (Doc. 1 at 13.) Petitioner does not explain what these disabilities are or the nature of their effects. He says he has a learning disability and difficulty in remembering and understanding. *Id.* at 5-7. However, these are conclusory statements without explanation as to how these prevented him from filing his habeas petition. Respondents raised this issue in their answer. (Doc. 9 at 6-7.) Petitioner did not respond. Petitioner has not shown that his impairments satisfy the extraordinary-circumstances requirement. Thus, he is not entitled to equitable tolling.

Additionally, Petitioner mentions that he did not exhaust his claims because the facility lost his legal documents. (Doc. 1 at 5.) This is not mentioned under the timeliness analysis. *Id.* at 13. There is no indication whether this occurred after his post-conviction relief proceeding was finalized or not. Thus, the Court does not find this convincing to toll the statute of limitations.

Petitioner is not entitled to equitable tolling.

## IV.     MANIFEST INJUSTICE/ACTUAL INNOCENCE

Actual innocence can provide a gateway to federal habeas relief through a procedural bar or the AEDPA's statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding actual innocence "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."); *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (actual innocence as a gateway for barred constitutional claims). Petitioners must show it is more likely than not that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386, 399 (quoting *Schlup*, 513 U.S. at 327, 329). This is a "demanding" standard, only available in the "extraordinary" case. *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not made an actual-innocence claim. (Doc. 1.) He does argue that the victim failed to identify him in a line up. *Id.* at 5. There is no indication that this is new evidence or sufficient to indicate no reasonable juror would have convicted him. Respondents raises this issue in their answer. (Doc. 9 at 7.) Petitioner failed to respond. Petitioner is not entitled to the actual-innocence gateway.

The Petition is untimely and Petitioner is not entitled to equitable tolling or use of the actual innocence gateway.

## V.     RECOMMENDATION

Accordingly, it is recommended that the district court, after its independent review, deny and dismiss the petition because it is untimely.

Pursuant to 28 U.S.C. § 636(b)(1) and 72(b)(2), Fed. R. Civ. P., any party may serve

and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. The Clerk of Court is directed to terminate the referral of this matter. Filed objections should bear the following case number: **4:22-cv-00195-TUC-JGZ**.

Dated this 1st day of March, 2023.

Honorable D. Thomas Ferraro
United States Magistrate Judge